Argued and submitted April 13, affirmed October 12, 1983

In the Matter of
Dana Stewart
by and through his parent
CARLENE STEWART,
*Petitioner,*

*v.*

SALEM SCHOOL DISTRICT 24J et al,
*Respondents.*

(A25956)

670 P2d 1048

Steve Brischetto, Oregon Developmental Disabilities Advocacy Center, Portland, argued the cause for petitioner. With him on the brief was Suzie Harris, Law Student, Portland.

Ronald J. Knox, Salem, argued the cause for respondent Salem School District 24J. With him on the brief was Paulus & Callaghan, Salem.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent Department of Education. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner, mother of a four and one-half year-old resident speech- and language-impaired child, filed a complaint against the Salem School District (district) with the Department of Education (department). OAR 581-01-010. Mother alleged that the district had denied her son a "free appropriate public education" because of his age in violation of state and federal statutes. Mother asked the department to order the district to provide speech therapy for her child.

The parties stipulated that child is handicapped, meets state criteria as a speech- and language-impaired child, is not eligible for the developmentally disabled pre-school program operated by the state Mental Health Division or for federally funded Title I and Headstart programs and would have been enrolled in district schools and received speech and language services from the district if he had not been under the regular school age, *i.e.*, six years of age, on November 15, 1981. It is not disputed that the district does not provide educational services for children under age 6, for example, in kindergarten or nursery school, whether or not they are handicapped.

The Superintendent of Public Instruction (superintendent), after a hearing, found that the district "has not served 50 percent of more of the four-year-old speech- and language-impaired children who are residents of the district." *See* 20 USC §1412; CFR 300.300(b)(3). His conclusions of law are:

"1.  Oregon law does not require school districts to educate handicapped children below age 6 unless educational services are provided to non-handicapped children in the same age group(s).

"2.  Since Salem School District 24J has not served 50 percent or more of the children of Dana Stewart's age and handicapping condition it may lawfully refuse to serve him.

"3.  Since the complainant has not prevailed she is not entitled to an award of attorney's fees."

The superintendent's accompanying opinion stated his interpretation:

"School districts may provide special education and related services to handicapped children under the age of six at the discretion of the local district school board. It is at the district school board's discretion whether or not the district will serve handicapped children under six years of age unless the district provides kindergarten, in which case, it would be required to provide special education and related services to handicapped children who are of kindergarten age. School districts may use PL 94-142 funds for such purposes. If the districts expend funds other than federal funds on the education of handicapped children below the age of six, they would be eligible for state reimbursement on the expenditures incurred in doing so."

Petitioner first asserts that, under ORS 343.221, the district must provide special services to the child, even though he is under regular school age. ORS 343.221 provides:

"In order to provide special education for handicapped children, the district school board of any school district in which there are children under 21 years of age who require special education:

"(1)   Shall submit an annual projected activities and cost statement to the Superintendent of Public Instruction for a program of special education for the district's handicapped children. The proposed district program shall include provisions for providing special education and related services and be designed to meet the unique needs of all resident handicapped children.

"(2)   Shall provide special education for such children consistent with the projected activities and cost statement.

"(3)   May, when the board considers a contract to be economically feasible and in the interests of the learning opportunities of eligible children, contract for special education for such children with another school district or an education service district if:

"(a)   The district school boards jointly agree to provide special education.

"(b)   The school districts within the education service district approve the contract by a resolution adopted in the manner provided in ORS 334.175(2).

"(c)   Any school district within the education service district contracts with the education service district in the manner provided in ORS 334.175(3) for such special education.

"(4)  May contract with private agencies or organizations approved by the State Board of Education for special education.

"(5)  May use the services of public agencies, including community mental health programs, which provide diagnostic, evaluation and other related services for children.

"(6)  May contract for the provision of related services by a person in private practice if that person is registered, certified or licensed by the State of Oregon as qualified to provide a particular related service that requires registration, certification or licensing by the state."

Except for the last sentence of subsection 1, which was added by Or Laws 1977, ch 529, § 1, and subsection 5, which was amended, and subsection 6 which was added by Or Laws 1981, ch 393, § 2, ORS 343.221 has existed in its present form since 1975. Or Laws 1975, ch 621, § 6.

ORS 343.221 refers to "handicapped children." ORS 343.035 defines "handicapped children":

"As used in this chapter unless the context requires otherwise:

"* * * * *

" 'Handicapped children' includes all persons under 21 years of age who require special education in order to obtain the education of which they are capable, because of mental, physical, emotional or learning problems. These groups include, but are not limited to those categories that have traditionally been designated: Mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally distrubed, orthopedically impaired or other health impaired children; individuals who are pregnant; or children with specific learning disabilities."

Petitioner argues that the terms "under 21 years of age" in ORS 343.221 and 343.035 constitute a "precise" term with a clear meaning and requires no agency explanation for its application. *See Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980).

The question here, however, is not whether the child is "under 21 years of age," but whether the statutory scheme requires that the district provide services to the child because he is "under 21 years of age." Our responsibility under ORS 183.482(8)(a) is to determine if the superintendent made an

error of law in his interpretation. As the superintendent stated in his opinion:

> "Although the complainant argues that the language in ORS 343.035 'stands alone' the available legislative history as well as the weight of opinion supports a different conclusion. It appears that while the legislature provided a broad mandate to educate handicapped children of all ages it nevertheless intended that this duty be carried out in a manner consistent with other requirements of public school law such as compulsory attendance, etc.[1] There is nothing which indicates that the legislature intended anything other than the handicapped students be afforded an equal access to educational services in Oregon schools. If this legislative policy is to be carried out it seems clear that school district may set age limits for serving handicapped students that are the same as those set for nonhandicapped students served by the district."

ORS 343.221 and 343.035 must be read together with other sections of ORS chapter 343 and other provisions of the Education Law, particularly ORS chapters 327, 336 and 339. We conclude that the superintendent did not err in determining that the district is *not required* to serve this child.

ORS 343.221 was amended in 1975 as part of a general revision of ORS chapter 343. Or Laws 1975, ch 621, § 6. The deletions and additions to ORS 343.221 made by section 6 of the Act are:

> "Section 6. ORS 343.221 is amended to read:

> "343.221. *[Subject to the approval of the Superintendent of Public Instruction]* **In order to provide special education for handicapped children**, the district school board of any school district in which there are children under 21 years of age who require special education:

> "**(1) Shall submit an annual projected activities and cost statement to the Superintendent of Public Instruction for a program of special education for the district's handicapped children.**

> "*[(1)]* **(2)** Shall provide special education for such children *[as part of the district's educational program; or]* **consistent with the projected activities and cost statement.**

---

[1]The compulsory attendance law applies to children ages 7 through 18. ORS 339.010 *et seq.*

"[*(2)*] **(3)**     May, when the board considers a contract to be economically feasible and in the interests of the learning opportunities of eligible children, contract for *[the instruction of]* **special education for** such children *[in a school district maintaining appropriate special education. The contract price of such instruction shall equal the cost of special education.]* **with another school district or an intermediate education district if:**

"**(a)     The district school boards jointly agree to provide special education.**

"**(b)     The school districts within the intermediate education district approve the contract by a resolution adopted in the manner provided in subsection (2) of ORS 334.175.**

"**(c)     Any school district within the intermediate education district contracts with the intermediate education district in the manner provided in subsection (3) of ORS 334.175 for such special education.**

"**(4)     May contract with private agencies or organizations approved by the State Board of Education for special education.**

"[*(3)*] **(5)**     May use the clinical services of public agencies which provide *[psychiatric]* **diagnostic and evaluation** services for children."

Under the 1975 Act, a district that provides special education programs for handicapped children "under 21 years of age" and wishes reimbursement for the program costs must receive approval from the superintendent for those programs and costs. The superintendent "shall establish criteria to guide the development and operation of special programs authorized by" ORS chapter 343 and "shall apply these criteria in certifying such programs for reimbursement." ORS 343.045. The superintendent "shall administer all programs established" under ORS chapter 343. ORS 343.055. The quoted provisions of ORS 343.221 follow. ORS 343.227 provides that, to receive special education, a handicapped child shall be determined eligible for such services under a school district program "approved under ORS 343.045 and as provided under ORS 343.221."

ORS 343.281 covers reimbursement to all districts for operation and administration of district special education programs "approved by the Superintendent of Public Instruction under ORS 343.035 and 343.221." A "district which

provides special education" shall file a claim with the superintendent for reimbursement. The superintendent, if he approves the claim, "shall reimburse the district in addition to the Basic School Support Fund 30 percent of the approved cost of providing special education for the school year for which reimbursement is claimed, or its equal prorated share of funds available, but not to exceed 30 percent of the district's approved cost of special education." "Approved cost of special education" means "all expenditures approved by the Superintendent of Public Instruction in accordance with administrative regulations established by the State Board of Education made by a school district * * * for providing instructional services for handicapped children in, or in addition to, regular classes."[2]

---

[2] The deletions and additions to ORS 343.281 made by Or Laws 1975, ch 621, § 10, were:

"Section 10. ORS 343.281 is amended to read:

"343.281. Reimbursement to all districts for operation and administration of district special education programs approved by the Superintendent of Public Instruction under ORS 343.212 to *[to 343.227]* **and 343.221** shall be made subject to the following provisions:

"(1) A district shall submit **by June 30** to the Superintendent of Public Instruction an estimate of the costs of providing special education for the following school year.

"(2) A district which provides special education *[or which expends more than the regular per capita cost on home or hospital instruction of crippled or physically handicapped children]* shall file with the Superintendent of Public Instruction, on or before October 1 following the close of the school year for which reimbursement is claimed, a *[notarized]* claim and such other information as may be required by the Superintendent of Public Instruction for reimbursement for which it is eligible for the cost of operation and administration of special education.

"(3) If the Superintendent of Public Instruction approves the *[application]* claim of a district for reimbursement, he shall reimburse the district **in addition to the Basic School Support Fund 30 percent of the approved cost of providing special education for the school year for which reimbursement is claimed, or its equal prorated share of funds available, but not to exceed 30 percent of the district's approved cost of special education. If an intermediate education district provides the special education programs, the superintendent shall reimburse the intermediate education district 30 percent of the approved cost of providing special education for the school year for which reimbursement is claimed, or its equal prorated share of funds available, but not to exceed 30 percent of the intermediate education district's approved cost of special education.** *[in an amount not exceeding one and one-half times the per capita cost of instruction for other children of such district except that in the case of home or hospital instruction, reimbursement shall be made only for such costs as are in excess of*

In the light of the requirements in the 1975 Act for approval by the superintendent of programs and costs, the deletion of the words in former subsection 1 of ORS 343.221 "Subject to the approval of the Superintendent of Public Instruction" is not of decisive importance.[3]

*the per capita cost of the district. If available funds will not permit maximum reimbursement, all districts claiming over $500 shall receive a pro rata reimbursement based upon the ratio that the total amount of funds available bears to the total amount of funds required for maximum reimbursement.]*

"* * * * *

"(7) Approved costs for special education mean all expenditures approved by the Superintendent of Public Instruction in accordance with administrative regulations established by the State Board of Education made by a school district or intermediate education district for providing instructional services for handicapped children in, or in addition to, regular classes.

"* * * * *"

[3] The predecessor of ORS 343.221, enacted in 1951, provided:

"With the approval of the Superintendent of Public Instruction, the district school board of any school district in which there are handicapped children *entitled to attend public schools:*

"(a) Shall, as part of the district school system, provide instruction in regular classes, special schools, special classes or home instruction for such children.

"(b) May organize suitable special classes whenever at least eight such children, each of whom is totally or partially deaf, totally or partially blind, speech defective, is crippled, cardiopathic or otherwise physically handicapped or is clinically maladjusted, will profit by a type of instruction differing from that given in regular school classes.

"(c) May, if less than eight children of any single type enumerated in paragraph (b) of this subsection are in the district and upon mutual agreement of the district school boards involved, contract for the instruction of such children in a school district maintaining an appropriate special class. The contract price of such instruction shall not be in excess of the regular per-child cost of conducting the special class.

"(d) May provide special materials and equipment for the education of handicapped children in regular or special classes, special schools or home instruction.

"(e) In cooperation with public agencies providing psychiatric services for children, may establish clinical classes for elementary and high school children who are maladjusted or have extreme learning difficulties." Or Laws 1951, ch 177, § 2(1). (Emphasis supplied.)

In 1953 the language "entitled to attend public schools" was replaced by the language "under 21 years of age who can profit from such instruction." Or Laws 1953, ch 710, § 3. The lead paragraph of the section provided:

"With the approval of the Superintendent of Public Instruction, the district school board of any school district in which there are handicapped children under 21 years of age who can profit from such instruction[.]"

■■  A district, therefore, may not be reimbursed for approved costs of special education unless the program is in accordance with criteria established by the superintendent and the superintendent approves the program and the expenditure. The legislature intended, by the 1975 Act, to clarify these arrangements but did not intend to require that districts must provide special education programs for handicapped children under regular school age. Indeed, it can be argued that the language of ORS 343.221 prior to 1975 was more favorable to petitioner's position. Former subsection (1) of ORS 343.221 provided that, if the superintendent approved, ·the district "[s]hall provide special education" for handicapped children under 21 years of age "as part of the district's educational program." As amended in 1975, the language "as part of the district's educational program" was deleted. In its place were inserted the words "consistent with the projected activities and cost statement," and a subsection (1) was added, providing that the district "[s]hall submit an annual projected activities and cost statement to the Superintendent of Public Instruction for a program of special education for the district's handicapped children." The subsections of ORS 343.221 that do not refer to the projected activities and cost statement, *i.e.,* subsections (3) through (5), are all permissive.

---

In the same act, the definition of "handicapped" children was amended to include the qualifying phrase "unless otherwise provided by context":

"As used in this Act, unless otherwise provided by context:

"* * * * *

"(2) 'Handicapped' includes all children who have the intellectual capacity and mental health to profit from such instruction and who for their education require instruction by means of a facility because they are crippled, blind, partially sighted, deaf, hard-of-hearing, speech defective, cardiopathic, tuberculous, or otherwise physically handicapped, and which physical incapacity has been continuous and extending over a period of at least two months unless it is established that the child's handicap is of a permanent nature; or because they are maladjusted; or have extreme learning problems exclusive of mental retardation." Or Laws 1953, ch 710, § 2.

The change in 1953 from "children entitled to attend public school" to "children under 21 years of age who can profit from such instruction" did not mean that the 1953 version required districts to provide special education for handicapped children under regular school age. Furthermore, the record does not disclose that the 1953 version, or as it was subsequently amended in the next 20 years, was ever applied to require a district to provide educational services to handicapped children under regular school age or that the superintendent ever approved such a mandatory program.

We conclude, therefore, that ORS 343.221 does *not require* a district to provide educational services for children under regular school age, although a district may choose to do so and seek approval of its programs and partial reimbursement of the costs from the superintendent.

■ The 1977 amendment to ORS 343.221(1), Or Laws 1977, ch 529, § 1, is consistent with this conclusion. Indeed, petitioners do not argue that the 1977 amendments changed the prior law to *require* the district to provide services to the child. The 1977 amendment added to ORS 343.221(1) the following sentence:

> "The proposed district program shall include provisions for providing special education and related services and be designed to meet the unique needs of all resident handicapped children."

The purpose of the 1977 amendment was to conform the Oregon statute to Pub L 94-142, the Education for All Handicapped Children Act, 20 USC 1400 *et seq.* The federal law and the regulations thereunder provide that a school district is *not required* to serve children under the age of 6, unless it serves 50 percent or more of the children in the child's age group that have the same disability. As noted below in our discussion of the second assignment of error, the defendant district does not.

A Task Force on Special Education drafted and submitted the amendment as part of its final report. The task force noted that, after the 1975 legislative session, Congress had enacted Pub L 94-142 "without the opportunity for state legislative review; this law has broad and far-reaching consequences in the area of special education. We felt it appropriate, therefore, to facilitate the state's compliance in every way possible." The report stated that compliance with Pub L 94-142 was necessary to avoid a substantial reduction in federal funds to local programs and that "we have prepared the legislation necessary, in our judgment, to enable the state to comply with P L 94-142 . . .SB 40 changes the provisions of the district's special education projected activities and cost statements."

The Measure Intent Statement prepared by the Task Force and submitted to the Senate Education Committee stated:

**"Problem addressed.**

"At present, some school districts avoid serving all of the handicapped children in their district by not providing for them in the district's annual projected activities and cost statement.

**"Function and purpose of measure as reported out.**

"Senate Bill 40 deals with this problem by requiring district boards to include in their annual activities and cost statement provisions for meeting the needs of all handicapped children in the district.

**"Major issues discussed.**

"1.  Is the bill necessary? It was determined by the committee that it was. The state must show that it is in compliance with PL 94-142 which requires that the needs of all handicapped children in the state are met.

"* * * * *

"The amendments limit the provisions of the district's annual activities and cost statement to providing a program for only these children who are residents of that district. It must also specifically provide for the education needs of resident handicapped children in the district. * * *"

At the Senate Education Committee hearings, Associate State Superintendent of Public Instruction Fasold, on behalf of the Department of Education, opposed language in the original bill which referred to programs to enable "all handicapped children to achieve their full potential." He stated:

"* * * I am unable to define the language 'full potential' * * *.

"In view of this objection, I should like to amend out of SB 40 this language and suggest to the Committee that the bill be amended as follows (page 2, line 11):

"handicapped children. The proposed program shall [: (a) Be] *be* designed to meet and provide for the special education needs of all resident handicapped children in the district [; and ] ___ [(b) Contain provisions to enable all handicapped children to achieve their full potential.] I would point out that this language will make Oregon laws more compatible with the language contained in PL 94-142."

Fasold also testified on SB 40 before the House Education Committee. The following exchange took place:

"[Rep] Yih:                Mr. Chairman, I think we also need to define the age. We have a question on the age, 21 and younger.

"[Rep] Martin:           21. It is the current law.

"Yih:                          How about this age, is it six to twenty-one or earlier?

"[Rep] Chrest:          Public Law 94-142 speaks to 5 through 21.

"Fasold:                   It talks of 3-21.

"Yih:                         Three?

"Chrest:                    Yes, but...

"Fasold:                   If the state doesn't have laws that control its attendance that, then that's the law for them, but this state has laws. Our present definition talks about all children under 21 years of age. Then you have to go back and look at the other statutes that we have which control entrance to the school programs. Basically speaking in Oregon we're talking about from the age of 5 through 18 or 19 years of age. There are also conditions in the law in that Chapter 347 says that if a district wants to have a pre-school program, in which children 3-9 might be involved in that program, then they have to come to the State Superintendent of Public Instruction to gain improvement, er approval for conducting that program so there are checks and balances in the system and we haven't made any suggestion of moving down to age 4. A matter of fact, some of the discussions before the Ways & Means, this is one of their major concerns. Presently we are going to operate on existing Oregon law and we've informed the federal government, here are the

laws that Oregon operates under and our school state plan calls for age 5.

"Yih: Mr. Chairman, are we doing Senate Bill 40 now?

"Chrest: Yes.

"Yih: I would like to amend the school age from 6 to 18 on line 7.

"[Rep] Kafoury: That's illegal, isn't it under the ___. (sic)

"Yih: Our school age children are 6 to 18 now.

"___:[sic] That's special.....

"[Rep] Kopetski: We have.....a plan.....from 3 to 5.

"Fasold: It's permissible.

"Chrest: To do what you're asking to do..

"Fasold: Under our laws, it is permissible for a school district to establish that kindergarten which would include 5-year olds. Once they establish that kindergarten it moves the age in that district down to age 5 because if they have a kindergarten program then that kindergarten must be provided for all children, they be normal or require special education.

"Yih: So is it legal to say '5 to 18'?

"Fasold: I think they ought to leave them as they are right now under the present situation because we have informed the federal government that we will operate under our existing laws pertaining to the interest of children."

Public Law 94-142 provides that its purpose is to "assure that all handicapped children have available to them * * * a free, appropriate public education which emphasizes special education and related services designed to meet their unique needs * * *." 20 USC 1400(c). It does not, however, without exception, require that all handicapped children under 21 years of age receive educational services. To qualify

for assistance under the Act, 20 USC 1412 requires that the following conditions be met:

"(1) The State has in effect a policy that assures all handicapped children the right to a free appropriate public education.

"(2) The State has developed a plan pursuant to section 1413(b) * * * which will be amended so as to comply with the provisions of this paragraph. Each such amended plan shall * * * assure that—

"* * * * *

"(B) a free appropriate public education will be available for all handicapped children between * * * the ages of three and twenty-one within the State not later than September 1, 1980, *except that, with respect to handicapped children aged three to five and aged eighteen to twenty-one, inclusive, the requirements of this clause shall not be applied in any State if the application of such requirements would be inconsistent with State law or practice, or the order of any court, respecting public education within such age groups in the State* * * *.

"* * * * *" (Emphasis supplied.)

The emphasized exception is covered by 34 CFR 300.300(b)(3):

"(b) *Age ranges 3-5 and 18-21.* This paragraph provides rules for applying the requirement in paragraph (a) of this section to handicapped children aged three, four, five, eighteen, nineteen, twenty, and twenty-one:

"* * * * *

"(3) If a public agency provides education to 50 percent or more of its handicapped children in any disability category in any of these age groups, it must make a free appropriate public education available to all of its handicapped children of the same age who have that disability."

To qualify for assistance, PL 94-142 requires a district to provide a "free, appropriate public education" for all handicapped children ages 3 to 5 and 18 to 21 if the district serves 50 percent or more of its handicapped children in the same age and disability category.

The legislative history, therefore, of the 1977 amendment is consistent with the interpretation of the superintendent that ORS 343.221 does not require a district to provide

educational services for children under regular school age, although a district may choose to do so and seek approval of its programs and partial reimbursement of costs. The purpose of the 1977 amendment was to assure that the state would be in compliance with the requirements of PL 94-142 so that a district could obtain additional reimbursement, whether or not it was required to provide the programs. Its purpose was *not* to *require* that districts provide services for handicapped children under regular school age unless Pub L 94-142 required it. As noted in our discussion of the second assignment of error, Pub L 94-142 does not require the district to provide those services.

We also conclude that ORS 343.035(2) defines "handicapped children" as children "under 21 years of age" and ORS 343.221 refers to children "under 21 years of age" so that discretionary programs for handicapped children under regular school age would be eligible for reimbursement.

■ Our interpretation is also consistent with the other sections of the education code.[4] ORS 339.115, governing free admissions to public schools, provides in part:

"(1) Except as provided in ORS 336.165 authorizing tuition for courses not part of the regular school program, the district school board shall admit free of charge to the schools of the district all persons between the ages of 6 and 21 residing therein. * * *

"(2) A child entering school for the first time during the fall term shall be considered to be six years of age if his sixth birthday occurs on or before November 15. A child entering school for the first time in a midwinter term, if the school has a beginning first-year class in midwinter, shall be considered to be six years of age if his sixth birthday occurs on or before March 15. However, nothing in this section prevents a district school board from admitting free of charge a child who is an educationally able and gifted child, as defined in ORS 343.395, entering school for the first time who has not attained the sixth birthday but who is a resident of the district.

ORS 339.115 does not require a district to provide education free of charge to children under regular school age. Petitioner argues that ORS chapters 339 and 343 developed apart from

---

[4] The 1981 amendments to ORS 343.221 are also consistent with this conclusion.

each other and that the context of ORS chapter 343 does not include ORS 339.115. We do not agree.[5]

Furthermore, the legislature has provided substantial funding for programs for handicapped children of regular school age but not for handicapped children under regular school age. ORS 343.281 provides in substance that the superintendent may reimburse districts for up to 30 percent of "approved cost of special education" *above* what other funds the district receives for the child's education. A district receives basic school support funds for standard elementary and secondary schools. ORS 327.010. Children attending such schools, unless unusually precocious, will be at least of regular school age. Children not attending standard elementary or secondary schools in a district cannot be counted in the computation of the district's share of basic school support funds, with an exception for kindergarten children. ORS 327.006(1) and (2) and ORS 327.010.

Respecting kindergartens, ORS 336.095(1) provides:

> "By July 1, 1989, the district school board of every common school district shall provide and before that date any district may provide kindergarten facilities free of charge for the kindergarten children residing in the district * * *."

It then provides that kindergartens "shall be funded in the same manner as other schools of the district are funded," ORS 336.095(2), and "are an integral part of the public school system of this state." ORS 336.095(3). In addition, ORS 327.006(1) provides that kindergarten children are counted at one-half in determining "aggregate days membership" for basic school support computation. The legislature made no such provisions for handicapped children under regular school age. Had the legislature intended to require districts to provide special education for handicapped children under regular school age, it is likely that it would have done so explicitly and provided funding as it did for kindergarten programs.

---

[5] ORS 339.115(2) specifically refers to ORS 343.395. Until 1973, furthermore, ORS 339.310 *et seq* allowed a district to exclude certain mentally retarded children from the public schools of the district. Mentally retarded children are now specifically referred to in ORS chapter 343. ORS 339.185(2) and ORS 339.253(1) also refer to ORS chapter 343. Both chapters 339 and 343 deal with the education of children. Funding of programs under both chapters are interrelated.

Accordingly, the superintendent did not err in ruling that, because the district does not provide services to non-handicapped children in the same age group, Oregon law does *not require* the district to provide service to the child. If the legislature intended that the district provide educational services to handicapped children under regular school age, it should have said so clearly.[6]

■■ Petitioner asserts that, in any event, 20 USC § 1400 *et seq* and the accompanying regulations require the district to provide services to the child, because the district provides services to 50 percent or more of the children in the child's age group that have the same disability. Petitioner's second assignment of error is that the superintendent erred in his finding of fact that the district does not serve 50 percent or more of such children. The pertinent provisions of 20 USC § 1412 and 34 CFR 300.300(b)(3) are set out in the discussion above of the 1977 amendment to ORS 343.221. Substantial evidence supports the superintendent's finding that the district "has not served 50 percent or more of the four-year-old speech- and language-impaired children who are residents of the district." We are bound by that finding. ORS 183.482(8)(c). Furthermore, we do not find that the superintendent's interpretation of the "50 percent rule" under 20 USC § 1412 is erroneous as a matter of law.

---

[6] The superintendent's opinion provides a reasonable summary:

"* * * Upon review of the record, it is clear that the following facts are supported by substantial evidence.

"1. A committee of the Oregon Legislature has, on at least one occasion, expressed the view that the age limits for education handicapped students are the same as for nonhandicapped students. There appears to be no legislative history to the contrary. * * *

"2. The Department of Education and the Superintendent of Public Instruction have consistently expressed the opinion that school districts are not required to serve preschool aged handicapped students.

"3. It has long been the common belief among school districts and most advocacy groups that services to preschool aged handicapped students are permissive. * * *

"4. Although the Attorney General's office has issued an informal opinion stating there is no bottom age limit for educating preschool handicapped students (see complainants exhibit D) the same office has consistently signed off on state applications for federal aid wherein it is specified that Oregon law sets a lower age limit of five years (see exhibit D-11, D-12, and D-13)."

■ Petitioner's third assignment of error, that the child was entitled to services under 29 USC § 794 (section 504 of the Rehabilitation Act of 1973), is also without merit, because the district is not required to provide services to the child under state law or 20 USC § 1400 *et seq.*

Because petitioner does not prevail, she is not entitled to attorney fees.

Affirmed.