NATRONA COUNTY SCHOOL DISTRICT NO. 1; The Wyoming State Board of Education; and The State Department of Education, Petitioners,

v.

Joanne RYAN and Edward Ryan, husband and wife, as next friends of Tammy Ryan, Respondents.

NATRONA COUNTY SCHOOL DISTRICT NO. 1, Petitioner,

v.

The STATE DEPARTMENT OF EDUCATION, State of Wyoming; Lynn Simons, Superintendent of Public Instruction, State of Wyoming; Dr. Audrey Cotherman, Deputy Superintendent of Public Instruction, State of Wyoming, Respondents.

Nos. 88–13, 88–14.

Supreme Court of Wyoming.

Nov. 15, 1988.

Robert H. McCrary and Judith A. Studer of Schwartz, Bon, McCrary & Walker, Casper, for petitioner Natrona County School Dist. No. 1 in Nos. 88–13 and 88–14.

Joseph B. Meyer, Atty. Gen., and Rowena L. Heckert, Sr. Asst. Atty. Gen., for petitioner State of Wyo. in No. 88–13 and respondents State of Wyo. in No. 88–14.

John Rivera of the Protection & Advocacy System, Inc., Cheyenne, for respondents Ryan in No. 88–13.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.*

URBIGKIT, Justice.

In this five-way funding dispute, appeal is presented for decision concerning state and local school district educational obligation for a handicapped individual between her twenty-first and twenty-second birthdays. The controversy invokes consideration of the Wyoming Constitution, state educational statutes, state agency administrative regulations, federal statutes, federal regulations, and an operational education funding agreement between the state and federal governments as each affect the operation of the local school district.

## I. PARTIES

Participating parties as the litigation developed before an appointed hearing officer (hearing officer) were Natrona County School District No. 1 (School District); the handicapped individual, Tammy Ryan, through her parents as next friends (Tammy Ryan); the State Superintendent of Public Instruction as a constitutional elected officer (State Superintendent);[1] and the Wyoming State Board of Education (State Board). An obvious non-participant involved party is the federal government by virtue of federal funding for handicapped children's education and the operational intergovernment contract executed by the State Board.

Procedural contest was initially instituted by Tammy Ryan regarding the obligation of the School District to provide an educational program for her beyond her twenty-first birthday. That controversy was assigned by the State Superintendent

---

* Retired June 30, 1988.

1. The record, briefing, and documentation variously lists the operational administrative agency as the State Superintendent, the State Department of Education, and Deputy Superintendent by name. We consider that the proper party is the State Superintendent as hereafter designated as the administrative agency for this discussion and decision pursuant to Wyo. Const. art. 4, § 11 and art. 7, § 14. Wyo. Const. art. 4, § 11 provides for the office and Wyo. Const. art. 7, § 14 supplies:

> The general supervision of the public schools shall be entrusted to the state superintendent of public instruction, whose powers and duties shall be prescribed by law.

The general organization of the State Department of Education was created in 1969 and was restructured by 1987 Wyo.Sess.Laws ch. 90, § 3.

Statutorily, in addition to the constitutional function of a State Superintendent of Public Instruction and the diverse rule making, accreditation, and supervisory responsibilities of the State Board of Education, there has existed since 1969

> a separate and distinct state department designated as the state department of education which shall be under the supervision of the state superintendent and consist of the state superintendent and such divisions, staffed by personnel and provided with facilities the state superintendent determines necessary to assist him in the proper and efficient discharge of his respective duties.

W.S. 21–2–104.

Structurally, as a matter of political science, the interjection of a "separate department" in addition to the constitutional office of the State Superintendent of Public Instruction and the statutory responsibilities of the State Board of Education is interesting in function and except as permitted by a delegation section, W.S. 21–2–105, would not seem to define an entity existence or separate function from the office of the State Superintendent of Public Instruction. Consequently, for the purpose of evaluation of education to the handicapped, we will accord decisional responsibilities to the State Board of Education and not the amorphous department to which may be delegated administrative and non-discretionary duties by the State Superintendent of Public Instruction.

under state rule and federal statute to a hearing officer as independent of any of the parties. From his adverse decision, the School District petitioned for the present administrative agency appeal to the district court. As phrased in terms of an administrative decision on funding, the State Superintendent's adverse decision to the School District was also removed by petition for review to the district court, and the separately developed proceedings were consolidated by order of the district court. The State Board and State Superintendent also petitioned for review from certain aspects of the hearing officer's decision and are both petitioners and respondents in the present appeal proceeding.

Pursuant to W.R.A.P. 12.09, the district court certified the combined litigation to this court, essentially presenting issues of contest between the School District and Tammy Ryan and the School District with both the State Board and the State Superintendent. The State Superintendent and State Board are petitioners on procedural issues in the hearing, and Tammy Ryan is respondent to objections taken from the hearing officer's decision by the School District, the State Board and the State Superintendent.[2]

## II. ISSUES RAISED BY LITIGANTS FOR APPEAL DECISION

The central issue raised on appeal by the School District is:

Can the Natrona County School District No. 1 and the State Department of Education provide an education to Tammy Ryan, a person over the age of twenty-one years, through age twenty-two, pursuant to order of an administrative hearing officer, when such action is beyond the scope of state and federal law that limits access to education to those children under twenty-one years of age?

Additionally, the School District raised several secondary issues and phrased them as whether:

2. In generalized terms, the state superintendent, as a constitutional officer, is answerable for the administration of education as a state responsibility. The state board consists of nine members appointed by the Governor to six year staggered terms, with the state superintendent as an ex-officio nonvoting member. It is designated as an appeal board for school districts appealing action by the State Department of Education. Educational planning involving federal funding as well as the state plan required thereby is a further responsibility. W.S. 21-2-301.

To be compared in statutory text are W.S. 21-2-201, the general supervision of public schools shall be entrusted to the state superintendent who shall be the administrative head and chief executive officer of the state department of education, as followed in W.S. 21-2-202 by a list of duties encompassing thirteen defined responsibilities, with W.S. 21-2-304 involving the duties of the state board, providing the state board shall establish policies for public education of the state consistent with the Wyoming Constitution and statutes, and may promulgate rules necessary to implement its responsibilities under the Wyoming Education Code of 1969 and then exercise defined functions of approximately three pages of assigned responsibilities.

The significance in this case is that administrative decisions on funding are clearly a function of the state superintendent, while execution of federal grant contracts and the adoption of policies and regulations relating to the distribution of the funds comes within the province of the state board. Pursuant to this authority, the state board, on June 19, 1986, adopted the Wyoming State Board of Education Rules and Regulations for Handicapped Children in Wyoming School Districts encompassing 111 sections and 100 pages as effective for the 1986-87 and succeeding school years. These provisions are generally and will be for the purpose of this opinion described as SBE rules.

In addition to the general powers as provided by W.S. 21-2-304 by even more recent legislation, the state board is responsible in conjunction with the separate school districts for education of the handicapped as:

Each school district of this state having any school age children residing in the district who possess any of the handicaps covered under this article, shall, subject to the rules and regulations of the state board, provide for the appropriate diagnosis, evaluation, education or training, and necessary related services, and may include, but is not limited to room and board, for those children. If the school district is unable to provide the necessary and appropriate programs and services, it shall contract with another school district or agency to obtain them. *If the programs and services cannot reasonably be provided by the district or by interdistrict contracts, the state board shall assist local boards of trustees in arranging for the appropriate educational programs and services either within or without the state pursuant to its rules and regulations and financed as provided by law.* [Emphasis added.]

W.S. 21-2-502.

[S]tate or federal funds are available to fund the education of Tammy Ryan beyond her twenty-first birthday in contravention of state and federal law?

[A]ssurances made by the State in the Title VI–B State Plan in order to conform to the requirements of and receiving of funding under the Education for All Handicapped Children Act of 1975 (EAHCA), and the Wyoming State Board of Education Rules and Regulations Governing Services for Handicapped Children in Wyoming school districts (SBE Rules) which provide that a child may continue to receive educational services through age twenty-two, form a basis to award educational services to Tammy Ryan in derogation of state and federal law?

[A]n Individualized Education Program (IEP), required by federal law for each individual handicapped child, developed by and through actions of a school district employee without formal approval or authorization by the Board of Trustees, can obligate Natrona County School District No. 1 (NCSD #1) to provide through that IEP a free appropriate education to a person over the age of twenty-one and can such IEP be a guarantee of services to that child through her twenty-second birthday, even if provision of those services is beyond the period of eligibility for educational services provided for under state and federal law?

[T]he State Superintendent can sever the issue of funding from the issue of the duty to provide educational services by invoking Section 7 of the SBE Rules dealing with controversies between the State Department of Education and a unified school district to determine the source of funds, and in that manner determine eligibility for an appropriate public education over the age of twenty-one?

The State Board and the State Superintendent, as respondents, raise the following issues:

1. Is the decision of the hearing officer that Tammy Ryan, a handicapped woman, [TR] is entitled to a free appropriate public education from age twenty-one until age twenty-two arbitrary, capricious, an abuse of discretion and not in accordance with law? Is it also in excess of the statutory jurisdiction and authority of the administrative forum, lacking statutory right and in violation of procedure required by law?

2. Did the hearing officer have jurisdiction to hear a legal dispute over eligibility for a free public education brought by one too old to be a child of public school age as defined by state law?

3. May a party to a special education due process hearing lawfully subpoena members of a state agency, having no personal knowledge of the petitioners' case, in contravention of SBE Rules, Section 12, and the Administrative Procedure Act, W.S. 16–3–107(h).

Tammy Ryan questions these points:

I. Did the impartial hearing officer have proper jurisdiction to decide whether Tammy Ryan, as a handicapped twenty-one year old student in the Natrona County School District No. 1, was entitled to a free appropriate public education, based on assurance made by the Wyoming State Board of Education to the federal government?

II. Was the decision of the impartial hearing officer in accordance with applicable law when his decision relied upon duly promulgated regulations and other assurances made by the State Board of Education?

A. Was the EHA Title VI–B State Plan, including all its assurances that twenty-one year handicapped students would receive a free appropriate public education, duly adopted pursuant to valid statutory authority?

B. By making the assurances contained in the EHA Title VI–B State Plan submitted to the federal government, did the state obligate itself to provide services to twenty-one year old handicapped students in Wyoming?

We will consider in decision that public education, pursuant to the Wyoming Constitution and statutory system, is the primary responsibility of this state within the principles of federalism. Imposition by ex-

ternal supercission of this basic commitment of Wyoming can only come from explicit requirements resulting contractually by acceptance of federal funds. Consequently, in according primacy to state responsibility, any supervening federal regulation is given strict scrutiny.

## III. STATUS OF PROCEEDINGS

The School District filed two petitions for relief for litigative transfer of these educational funding issues to the district court. The first was from the decision of the hearing officer which had declared the School District responsible for the education of the handicapped individual, Tammy Ryan, until her twenty-second birthday. The second was filed in response to a decision of the State Superintendent which denied state funding for the education required by the hearing officer in which the State Superintendent regarded the matter as a controversy between a local school district and the State Department of Education, and had declared that to the extent that federal Title VI–B State Plan flow through funds were available to the School District, it could allocate as needed within the local educational program for funding but *could not* use state foundation program funds to provide the education to Tammy Ryan or to the others of similar age status.

Generally, in appealing the controversy to the district court, the School District argued that the ruling by the hearing officer, based in part on a United States Supreme Court opinion in *Board of Educ. of Hendrick Hudson Central School Dist. Bd. of Ed., Westchester County v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) defining 84 Stat. 175, as amended, 20 U.S.C. §§ 1400, et seq. (1976 ed. & Supp. IV 1986), and which resulted in full funding for educational services to Tammy Ryan,

was contrary to the advice memorandum of the Deputy State Superintendent determining that federal funds could be used only on a per pupil basis.

As the major decision in this complex administrative proceeding now presented, we reverse the decision of the hearing officer which would extend educational responsibilities of the School District for the handicapped person beyond her twenty-first birthday. We also void regulations of the State Board and decision of the State Superintendent that the School District has either obligation or discretion to provide handicapped adult education.

## IV. FACTS

Tammy Ryan, as a multiple handicapped student then nearly twenty-one years old, by her parents as next friends, filed a complaint on July 2, 1987 with the State Superintendent requesting a due process hearing after being informed by the School District administration that the State Department of Education had advised she would no longer be eligible for a public education at taxpayer expense once she reached the age of twenty-one. The complaint specifically asked for a determination of her eligibility and the School District's obligations to her after age twenty-one. A hearing was granted by direction of the State Superintendent as held before a designated independent hearing officer on August 10, 1987.

A motion to amend the complaint was filed on July 17, 1987 for the purpose of making the State Department of Education (State Superintendent) a co-respondent. The amended complaint petitions for a decision that would require the *State Superintendent* to order the *School District* to continue the post-twenty-first birthday education.[3] Responsively, the State Superin-

---

**3.** The incongruity of a State Superintendent hearing ordering the State Superintendent to do something was never addressed directly since no order was entered by the hearing officer authorizing the amended complaint. However, the *State Board* answered in general denial. The hearing officer decision determined that funding was beyond the scope of his due pro-

cess forum in his determination that as to the School District, Tammy Ryan was entitled to "a full range of educational and related services * * * through age twenty-two." In a comparable case now also pending before this court on appeal, *Wyoming State Board of Education v. Cochran*, 764 P.2d 1037 (Wyo.1988), the hearing officer reached a directly opposite conclusion.

tendent contended that the School District could continue the education provided state funds were not used.

The State Board moved pre-hearing to dismiss for lack of jurisdiction, asserting that issues raised in connection with federal law and State Board rules involving a "school age child" were inapplicable to Tammy Ryan whose eligibility for special education had expired on August 5, 1987 (twenty-first birthday). The hearing officer took the motion under advisement without expressly ruling. The State also sought to quash subpoenas issued by the hearing officer to State Department of Education upper-echelon personnel. The motion to quash was denied for which a further appeal issue is presented by the State Superintendent.

The hearing officer concluded that failure by the School District to provide Tammy Ryan with education through age twenty-one, which would encompass the year after she turned twenty-one and expire on her twenty-second birthday, would deny her a right to a free appropriate public education. He based this conclusion on language contained in the Title VI–B State Plan, in effect since 1981, in accordance with the Education for All Handicapped Children Act (EHA), stating that education would be assured by the state to handicapped students "through age twenty-one." Further support for his position, he reasoned, could be found in SBE Rules, § 74.

The School District, faced with providing educational services to Tammy Ryan, also sought a ruling on the issue of funding from the State Department of Education. *City of Evanston v. Griffith*, 715 P.2d 1381 (Wyo.1986). The State Superintendent, unwilling to allow the hearing officer to render a decision on the funding issue, severed this issue from those of eligibility at the scheduled hearing. In this second proceeding, the State Superintendent held that the School District could use its federal funding any way it saw fit to satisfy the decision of the hearing officer, as long as no state funds were expended for the adult. This meant in finite result that the School District was obligated to fund post-twenty-first birthday education by detouring other federal funds or using local resources as reducing its capacity for educational response to persons under twenty-one years of age. Judicial appeals from both decisions followed.[4] *City of Evanston, v. Griffith*, 715 P.2d 1381 (Wyo.1986); *Simons v. Laramie County School Dist. No. One*, 741 P.2d 1116 (Wyo.1987).

## V. BACKGROUND

The principles regulating the educational rights of the handicapped are found in both Wyoming statutes and federal funding provisions. At the state level, handicapped children have educational rights conferred by Wyo. Const. art. 1, § 23, and a free education guaranteed by Wyo. Const. art. 7, §§ 1 and 9 and art. 21, § 28. These principles, in conjunction with the mandates of W.S. 21–4–301 and 21–2–501,[5] confer a free appropriate public education to

---

However, the district court in the succeeding declaratory judgment in Goshen County in effect reversed the hearing officer and also reached the opposite decision from that of the State Superintendent from which this current appeal by the School District is taken.

**4.** Tammy Ryan, age twenty-one on August 5, 1987, as about four feet tall and weighing approximately 200 pounds, was found by the hearing officer as a multiple handicapped person suffering from hydrocephalus, mental retardation, blindness, paralysis and obesity. Evidence indicated that the further year's education would cost about $16,000 if provided in-district and $200,000 out-of-district. Cost to the state for persons for the additional year over age twenty-one was estimated to total four million dollars for a biennium which funding had been

denied by the legislature. The allocable federal funding which was estimated to total about $209 to $211 for that adult student was considered in State Superintendent decision to be available. This would leave a revenue funding deficit for in-district education for this one person of about $15,700 and out-of-district care of up to $200,000.

**5.** W.S. 21–4–301 provides:

Except as otherwise provided by law, the public schools of each school district in the state shall at all times be equally free and accessible to all children resident therein over six (6) years of age and under the age of twenty-one (21), subject to such regulations as the board of trustees may prescribe.

W.S. 21–2–501 provides:

children "under the age of twenty-one." The federal law is generally embodied in 20 U.S.C. §§ 1400, et seq. (1976 ed. & Supp. IV 1986).[6]

The EHA is a funding measure under which the federal government extends monetary assistance to states for the schooling of handicapped children. Acceptance of these funds by the State Department of Education on behalf of local school districts, can tie the state to certain standards and conditions in its use. See *Monahan v. State of Neb.*, 491 F.Supp. 1074 (D.Neb.1980), aff'd in part and vacated in part, 645 F.2d 592 (8th Cir.), remanded sub nom. *Rose v. State of Neb.*, 530 F.Supp. 295 (D.Neb.1981), judgment aff'd in part and vacated in part 687 F.2d 1164 (8th Cir.1982), cert. denied sub nom. *Rose v. Nebraska*, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481, and remanded 575 F.Supp. 132 (D.Neb.1983), judgment aff'd as modified sub nom. *Rose v. State of Neb.*, 748 F.2d 1258 (8th Cir.1984), cert. denied sub nom.

> Every child of school age in the state of Wyoming having a mental, physical or psychological handicap or social maladjustment which impairs learning, shall be entitled to and receive a free and appropriate education in accordance with his capabilities.

**6.** The federal law originated in 1970 with the passage of the Education of the Handicapped Act (P.L. 91–230, 84 Stat. 175), and has been amended numerous times. The Education of the Handicapped Amendments of 1974 (P.L. 93–380, 88 Stat. 579), expanded many fiscal aspects and created a bureau and national advisory committee. The changes in 1975, Education for All Handicapped Children Act of 1975 (P.L. 94–142, 89 Stat. 773), added a finding and purpose section and provided more detailed provisions on entitlements and allocations. The Education of the Handicapped Amendments of 1977 (P.L. 95–49, 91 Stat. 230) authorized special educational model programs, and the Education of the Handicapped Act Amendments of 1983 (P.L. 98–199, 97 Stat. 1357) created the Office of Special Education Program within the Department of Education inter alia and established regional resource centers. Two changes occurred in 1986. First, the Handicapped Children's Protection Act of 1986 (P.L. 99–372, 100 Stat. 796) was approved August 5, 1986 and authorized attorney fees to be awarded to prevailing parties. Second, the Education of the Handicapped Act Amendments of 1986 (P.L. 99–457, 100 Stat. 1145) was approved October 8, 1986 reauthorizing discretionary programs and authorized early intervention for handicapped youth.

*Lutjeharms v. Rose*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 50, reh'g denied by 474 U.S. 1014, 106 S.Ct. 547, 88 L.Ed.2d 476 (1985). An informative and comprehensive law journal analysis applying EHA to Wyoming state law was written by Robert J. Walters, Comment, *Education for Handicapped Children in Wyoming: What Constitutes a Free Appropriate Public Education and Other Administrative Hurdles*, XIX Land & Water L.Rev. 225 (1984).[7]

### 1. "Free Appropriate Public Education"

The EHA "requires that in order to qualify for funds under the act a state must demonstrate that it has in effect 'a policy that assures all handicapped children the right to a free appropriate public education.' 20 U.S.C. § 1412(1)." *Association for Retarded Citizens in Colorado v. Frazier*, 517 F.Supp. 105, 108 (D.Colo.1981).[8]

Title 20 U.S.C. § 1401(a)(18) (1982 ed. & Supp. IV 1986) defines a free appropriate public education as

**7.** The federal preclusion has similar aspects to speed limit and twenty-one year old drinking age federal legislation. Surprisingly, this well-written law journal article was not cited by any of the litigants in appellate briefs. This often considered subject is illustrated by the numerous other law journal articles, many of which are cited in Comment, supra, XIX Land & Water L.Rev. at 226 n. 8.

**8.** The Act's emphasis on the unique needs of the handicapped child and on the individualized programming make it clear that "appropriate education" is to be determined in relation to each handicapped child. Beyond these confines, however, the Act fails to provide a definite standard for determining the minimal or acceptable limits of "appropriate education." The regulations promulgated under the Act do nothing more than paraphrase the purpose and broad definition of appropriate education from the Act itself. Therefore, it appears that the Act and regulations leave the task of specifically defining "appropriate education" up to the local educational authorities, and in cases of dispute, to the courts. Given this lack of direction, it is not surprising that courts have arrived at various interpretations. Note, *Springdale School District No. 50 v. Grace: "Appropriate Education" Under the Education for All Handicapped Children Act*, 15 Creighton L.Rev. 950, 957 (1982) (footnotes omitted).

special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

The term "free appropriate public education" (the institutionalists and many law journal writers use the acronym FAPE) acquires substance under 20 U.S.C. §§ 1400, et seq. (1976 ed. & Supp. IV 1986) through the utilization of the Individualized Education Program (IEP).[9] An IEP is defined as

> a written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents or guardian of such child, and, whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C. § 1401(a)(19) (1982 ed. & Supp. IV 1986). To further insure compliance with the IEP mechanism, 20 U.S.C. § 1414(a)(5) (1982 ed. & Supp. IV 1986) requires that local educational agencies review and, if necessary, revise each handicapped child's IEP annually.

The prerequisites of a free appropriate public education must be compatible with the precepts of the state educational agency. 20 U.S.C. § 1401(a)(18)(B) (1982 ed. & Supp. IV 1986). Nevertheless, the practices and programs the state educational agency must generate are defined by the EHA. 20 U.S.C. § 1412(2) (1982 ed. & Supp. IV 1986). Among those practices and programs are: (1) an intent to provide full educational opportunity to all handicapped children, 20 U.S.C. § 1412(2)(A) (1982 ed. & Supp. IV 1986); (2) within an established age limit, 20 U.S.C. § 1412(2)(B) (1982 ed. & Supp. IV 1986); and (3) a system which is devised to recognize handicapped children and the limit to which each child may or may not be obtaining relevant special education and associated services, 20 U.S.C. § 1412(2)(C) (1982 ed. & Supp. IV 1986). See also Comment, supra, XIX Land & Water L.Rev. at 228.

Now Chief Justice Rehnquist, writing for a majority of the court in *Rowley*, 458 U.S. at 200, 102 S.Ct. at 3048, expressly rejected the lower court's finding "that the Act requires New York to maximize the potential of each handicapped child commensurate with the opportunity provided non handicapped children." The court then went on to hold that as defined in the EHA,

---

**9.** After Rowley, a handicapped child is receiving an appropriate education when the program the school provides allows the child to benefit educationally. If a child is being educated in the regular classroom, the educational-benefit standard is satisfied when the IEP is reasonably calculated to allow the child to obtain passing marks and grade advancement. In formulating this test of educational benefit, the Supreme Court reasoned that when the child is mainstreamed into the regular classroom the school system itself monitors edu-

cational progress with a system of grading and advancement. Therefore, the Court concluded, because graduation is equated with education in our society, grading and advancement constitute important indicators of educational benefit for the handicapped children being educated in the regular classroom. Note, *Board of Education v. Rowley: Handicapped Children Are Entitled to a Beneficial Education,* 69 Iowa L.Rev. 279, 293 (1983) (footnotes omitted).

a "free appropriate public education" consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child "to benefit" from the instruction. Almost as a checklist for adequacy under the Act, the definition also requires that such instruction and services be provided at public expense and under public supervision, *meet the State's educational standards*, approximate the grade levels used in the State's regular education, and comport with the child's IEP. Thus, if personalized instruction is being provided with sufficient supportive services to permit the child to benefit from the instruction, and the other items on the definitional checklist are satisfied, then the child is receiving a "free appropriate public education" as defined by the Act. [Emphasis added.]

Id. at 188–89, 102 S.Ct. at 3041–42.

The United States Supreme Court, in its view of the EHA, recognizes certain factors, outside the facts of Rowley, that may have influenced the decision. One consideration involved is the long-standing philosophy that education should be left to state control, within constitutional limitations. This conforms to the current trend of minimizing federal involvement in affairs with local disposition. This concern was manifested by limiting review of state and local educational decisions, and is evidenced by the court's reference to *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 42, 93 S.Ct. 1278, 1301, 36 L.Ed.2d 16, reh'g denied 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973). The emphasis on procedural rights rather than substantive attributes for the individual is clearly defined in majority and dissent. Note, *Education—Handicapped Children—The Education for All Handicapped Children Act Entitles Handicapped Children to Individually, Beneficially, Designed Education Program; Reviewing Court to Determine Reasonableness of Program Formulation and Proce-* *dural Compliance with Act*, 13 Seton Hall L.Rev. 575 (1983). See also Note, *Education—Board of Education v. Rowley: The Supreme Court Takes a Conservative Approach to the Education of Handicapped Children*, 61 N.C.L.Rev. 881 (1983).

### 2. *Wyoming Law*

The Wyoming Constitution, as differing from the United States Constitution and constitutions of some states, explicitly acknowledges the right to education.[10] Painter and Johnson, *The Wyoming Education Code of 1969*, V Land & Water L.Rev. 531, 559 (1970). Wyo. Const. art. 7, § 1 also authorizes the legislature to "provide for the establishment and maintenance of a complete and uniform system of public instruction, embracing free elementary schools of every needed kind and grade, * * * and such other institutions as may be necessary." Additionally, Wyo. Const. art. 21, § 28 commands the legislature to "make laws for the establishment and maintenance of systems of public schools which shall be open to all the children of the state and free from sectarian control." In 1969, the Wyoming legislature expressly set out an educational code which provided a specific program for handicapped children. Since passage of the EHA by the federal government, the program, updated to reflect the federal law, provided in W.S. 21–14–101:

> Each and every child *of school age* in the state of Wyoming having a mental, physical or psychological handicap or social maladjustment which impairs learning, shall be entitled to and shall receive a free and appropriate education in accordance with his capabilities. [Emphasis added.]

The Wyoming legislature, in a housekeeping move, made a slight modification to W.S. 21–14–101, changing it to W.S. 21–2–501, providing that "[e]very *child of school age* in the state of Wyoming having a mental, physical or psychological handi-

---

**10.** Wyo. Const. art. 1, § 23 provides:
The right of the citizens to opportunities for education should have practical recognition.

The legislature shall suitably encourage means and agencies calculated to advance the sciences and liberal arts.

cap or social maladjustment which impairs learning, shall be entitled to and shall receive a free and appropriate education in accordance with his capabilities." (Emphasis added.) [11] Other provisions in the education code which modify and provide meaning to the term *school age child* are W.S. 21–4–301 and 21–4–302.[12] While congressional authority embracing education of the handicapped student is postulated in part on its provisional spending prerogative or under a policy of dual federalism, U.S. Const. art. I, § 8, the Wyoming legislature's authority originates directly in state constitutional obligation and guarantee, Wyo. Const. art. 1, § 23; art. 7, §§ 1 and 9; and art. 21, § 28.

In 1980, this court characterized the constitutional educational right for children as a "matter of fundamental interest" in isolating a classification based on wealth as suspect when applied to that fundamental interest. *Washakie County School Dist. No. One v. Herschler*, 606 P.2d 310, 333 (Wyo.), cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). This state's constitutional right to education suggests another difference between Wyoming's duty to support education for handicapped children and the conditions the EHA levies on other participating states. As both laws require a free appropriate public education for a handicapped child, the difference lies in the language of the Wyoming statutes and the goals envisioned by that language. In Rowley, the United States Supreme Court established that a handicapped child secures a free appropriate public education if personalized training, rendered with adequate supportive services, permits the child "to benefit" from that training. Thus, the United States Supreme Court instituted minimal standards to which states must adhere to be eligible for federal funds. The rules promulgated by the State Department of Education implementing the

laws governing handicapped education, declare that their purpose is "to ensure that, * * * each *school-age* handicapped child in Wyoming receives a free and appropriate education, in accordance with the child's individual capabilities * * *." SBE Rules § 1 (emphasis added). See also Comment, supra, XIX Land & Water L.Rev. 225.

The criteria "in accordance with the child's individual capabilities" provides the most substantive authorization for educational opportunity to Wyoming handicapped children. This phrase expresses what form a free appropriate public education is to assume within local educational agencies. Whereas the EHA envisions "meaningful access" to public education, *Rowley*, 102 S.Ct. at 3048, the Wyoming embodiment of its statutes as regulations could be viewed to include a meaningful education as well. However, as in the EHA, in Wyoming the guarantee of a free appropriate public education does not compel the state to furnish handicapped children with the "best available education." Comment, supra, XIX Land & Water L.Rev. at 235. Consequently, we determine that enforcement of state constitutional and statutory standards for substantive educational accomplishment for the individual also achieves compliance with any federal requirement that could lawfully be included in the state-federal plan and accompanying regulations. *Rowley*, 458 U.S. 176, 102 S.Ct. 3034.

The EHA also empirically requires an impartial due process hearing that employs the state's administrative procedure act, and the rules issued by the state educational agency. 34 C.F.R. § 300.506(b) (1987). Although state administrative procedural rules may differ, the hearing officer may not be an employee of the agency handling the hearing, be involved in the education or care of the subject child, or have a professional or individual prejudice. 34 C.F.R.

---

**11.** Effective July 1, 1987, the legislature amended and renumbered former W.S. 21–14–101 (1986 Replacement) as present W.S. 21–2–501 and substituted "Every" for "Each and every."

**12.** W.S. 21–4–302 provides:

(a) A pupil may register in the first grade in the public schools of this state in the year in

which his sixth birthday falls on or before September 15.

(b) A pupil may register in kindergarten in the public schools of this state in the year in which his fifth birthday falls on or before September 15.

§ 300.507(a)(1) and (2) (1987). Additionally, the hearing process addressed by the regulations envisions an adversary proceeding, 20 U.S.C. § 1415(b) and (d) (1982 ed. & Supp. IV 1986), as left to the discretion of the individual states to decide whether to restrict the hearing process to the state educational authority or place it within the local educational level. 20 U.S.C. § 1415(b)(2) (1982 ed. & Supp. IV 1986). If the state agency conducts the hearing, then the decision of the hearing officer is deemed administratively final, 34 C.F.R. § 300.509 (1987), as differentiated from a hearing involving the local educational agency which, on appeal, must first be reviewed by the state educational agency prior to judicial review. 34 C.F.R. § 300.510 (1987).

Although some courts [13] have held that judicial review under the EHA is not limited to the kind of review required by the federal Administrative Procedure Act, the court in *Rowley*, 102 S.Ct. at 3051 stated that

> the provision that the reviewing court must base its decision on the "preponderance of the evidence" is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.

Consequently, any adjudicatory discussion of handicapped student education requires primary recognition of the federalism function of the EHA. The broad array of judicial rights pyramided from the EHA mandate a close state attention to the complex due process dual jurisdiction status since both state and federal courts have original jurisdiction.

## VI. DISCUSSION

### 1. *Standard of Review*

The primary responsibility of the state legislature for public education is constitu-tional. The judiciary in constitutional perspective is entitled to become involved only when these constitutional prerequisites are not met. Otherwise, the courts are confined to interpreting and enforcing the intent of the legislature. In this controversy, the potential obligation of the School District to provide adult education and the authority of the State Superintendent to administratively enforce statutes with that of the State Board to adopt rules, brings our attention to both statute and constitution.

In this case, the hearing officer was presented no realistic factual conflict when faced with a decision comprising questions of law. No one questioned the handicapped status of Tammy Ryan. Consequently, the decision is peculiarly presented for judicial determination and not administratively emplaced hearing officer decision. No deference is accorded in our consideration to the legal conclusions of the hearing officer as the administrative officer which involve basic educational eligibility and responsibility. *Holding's Little America v. Board of County Com'rs of Laramie County*, 712 P.2d 331 (Wyo.1985); *Board of Trustees of School Dist. No. 3, Natrona County v. District Boundary Bd. of Natrona County*, 489 P.2d 413 (Wyo.1971); *Wyoming Dept. of Revenue v. Wilson*, 401 P.2d 960 (Wyo.1965). Here on appeal, state educational responsibilities and funding obligations as litigable issues solely present issues of law. Consequently, the subject of our review is whether either the hearing officer or the State Superintendent correctly applied the legal rules to a defined set of facts, *Cody Gas Co. v. Public Service Com'n of Wyoming*, 748 P.2d 1144 (Wyo.1988); *Walker v. Karpan*, 726 P.2d 82 (Wyo.1986); and *Belco Petroleum Corp.*

---

**13.** See *Doe v. Anrig*, 692 F.2d 800, 805–06 (1st Cir.1982), remanded 561 F.Supp. 121 (D.Mass. 1983), judgment aff'd 728 F.2d 30 (1st Cir.), order aff'd in part, rev'd in part sub nom. *Town of Burlington v. Dept. of Educ. for Com. of Mass.*, 736 F.2d 773 (1st Cir.), cert. granted sub nom. *School Committee of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 469 U.S. 1071, 105 S.Ct. 562, 83 L.Ed.2d 504 (1984), judgment

aff'd 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) and *Department of Educ., State of Hawaii v. Katherine D. By and Through Kevin and Roberta D.*, 727 F.2d 809, 814 (9th Cir.1983), cert. denied 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985). These deviations may call into question any future district court certification without initial decision as otherwise permitted by W.R.A.P. 12.09.

v. *State Bd. of Equalization*, 587 P.2d 204 (Wyo.1978), or committed error in the application of an erroneous rule of law. *Rocky Mountain Oil and Gas Ass'n v. State Bd. of Equalization*, 749 P.2d 221 (Wyo.1987); *Wendling v. Cundall*, 568 P.2d 888 (Wyo. 1977).

### 2. *Legislative History of 20 U.S.C. §§ 1400, et seq. (1976 ed. & Supp. IV 1986)*

The EHA as amended July 1, 1976, replaced the language of existing part B to provide an entitlement formula for fiscal years 1977 through 1979. This formula established eligibility rules and annual document standards not previously contained within the language of the EHA. This section, designed to establish basic minimum procedures governing the distribution of federal funds to states observing the standards, set up service priorities and timetables for assurance of compliance by states requesting funds. By providing a state plan to obtain federal funds, a single state agency assures the federal government that all handicapped children between the ages of three through twenty-one are identified, located and evaluated. If special education or related services are needed, they are to be provided. Among those purposes designed to be achieved by the EHA were: (1) priority assurances for delivery of services to those handicapped children with the most need; and (2) to focus on the problem of erroneous classification and labeling of children by setting a limit on the population of children who may be counted as eligible for services. These purposes focus on the "zero reject" principle of the EHA, which is based on the theory that *all* children can benefit from an education. 20 U.S.C. § 1412 (1982 ed. & Supp. IV 1986).

While it was the functional intent of Congress by financing incentive to promote education for all handicapped children, the statutory language provides some flexibility to states in carrying out the mandate of providing educational opportunities to their school-age handicapped children. The exceptions affording this state flexibility under 20 U.S.C. § 1412(2)(B) (1982 ed. & Supp. IV 1986) contendably resulted in failure of some states to provide desired educational services. Rather than mandate services for these children, Congress adopted the Education of the Handicapped Act Amendments of 1986, P.L. 99–457, 100 Stat. 1145, which furnishes significantly greater financial incentives.[14] However, in addition to the substantive provisions, a system of procedural guarantees is created, including specifically, a fair hearing opportunity to be individually provided for each student.[15]

### 3. *Scope of Hearing Officer's Function*

All parties to this action address different aspects of the hearing officer's authority to hear evidence concerning Tammy Ryan's rights. The School District argues that the decision of the hearing officer was beyond his jurisdiction and authority. The State Superintendent and State Board, while also questioning the authority or jurisdiction of the hearing officer in context, dispute the holding as being arbitrary, capricious and an abuse of discretion. Tammy Ryan alleges that neither the State nor the School District could dismiss the procedural requirements established by 20 U.S. C. § 1415(b)(1)(E) (1982 ed. & Supp. IV 1986) and 34 C.F.R. §§ 300.500, et seq. (1987), which allows Tammy Ryan, as a recipient of educational services under 34 C.F.R. § 300.300(b)(4) (1987), to present complaints in a formal hearing protesting a change in her present placement status. The continuum of argument is switched

---

**14.** In its legislative re-authorization of the EHA and the services it provides to all handicapped children, Congress extended some education services to handicapped infants and pre-schoolers and granting special incentives to children from birth to age two. This amendment provides for a program of early intervention services which will make special education for three to five year olds mandatory under the EHA by 1990. Education of the Handicapped Act Amendments of 1986, P.L. 99–457, 100 Stat. 1145.

**15.** The carrot had grown, but the stick was more severely preserved in placement and size.

from statutory to individualized issues of need by Tammy Ryan.

The statutory purpose of the hearing officer is to make determinations as "to any matter relating to the identification, evaluation, or educational placement of the child, *or the provision of a free appropriate public education to such child," William S. v. Gill*, 536 F.Supp. 505, 510 (N.D.Ill. 1982) (quoting from 20 U.S.C. § 1415(b)(1)(E)) (emphasis in original), with the key word in this quote being "child." Tammy Ryan asserts that the complaint filed July 2, 1987, four weeks prior to her twenty-first birthday, entitles her to this designation. However, this argument does not address the fact that any decisions made as to her situation as a handicapped student became effective after she reached adult status on August 5, 1987.

■ A hearing officer addressing a change in educational placement of a *school-age child* is within the authority granted by law when adjudicating educational rights of a child. 20 U.S.C. § 1415(b)(1)(E) (1982 ed. & Supp. IV 1986). However, this same language does not apply to an adult when the age of twenty-one is reached which becomes a decision of law. Support for this position can be found not only in federal case law, *Honig v. Doe,* —— U.S. ——, 108 S.Ct. 592, 595, 98 L.Ed.2d 686 (1988), ("the Act limits eligibility to disabled children *between* the ages of 3 and 21" (emphasis added)), but also in Wyoming statutes W.S. 21–4–301 and 21–4–302 defining school age children as "over six (6) years of age and under the age of twenty-one (21)." (W.S. 21–4–302 extends eligibility for attendance in public schools to five year olds.)

We find that the hearing officer was without authority or jurisdiction to hear issues affecting this twenty-one year old adult, thus unable to force a continuation of Tammy Ryan's status quo, and could not decide the issues before him on August 10, 1987. In determining that a hearing was required to effect due process with regard to Tammy Ryan's educational rights, the State Superintendent also then misinterpreted the administrative issue presented.[16]

As to mootness of any action by an administrative agency or judicial body, we have stated that:

We are committed to the rule that an appellate court will dismiss a case if, pending appeal, an event occurs which makes the determination of the issues presented unnecessary and thus renders the case moot. * * *

\* \* \* \* \* \*

Appropriate judicial restraint should be exercised when a controversy has been resolved and thus become moot at the time the case is presented to this court. Advisory opinions generally are to be avoided because the adversary system does not function as contemplated in the absence of a case or controversy.

*In the Interest of AJ*, 736 P.2d 721, 723 (Wyo.1987).

Appellate courts, including trial courts in an appellate role, will not render decisions which cannot be carried into effect.

*Northern Utilities, Inc. v. Public Service Commission*, 617 P.2d 1079, 1085 (Wyo. 1980).

The decision by the hearing officer, partially based on non-completion of Tammy Ryan's IEP by the School District, forces this court to address some aspects of his opinion as though the School District in complying with the EHA, must fully complete all of the student's IEP to Tammy Ryan's satisfaction. Thus, any decision we make with respect to this opinion, regardless of eligibility for educational services, does not reflect a decree "which cannot be carried into effect." *Northern Utilities,* 617 P.2d at 1085. See also *Simons,* 741 P.2d 1116.

In addition, Chief Justice Rehnquist, in a concurring opinion in Honig, in a situation not unlike the facts of this case, discussed

---

**16.** The record reflects a more recent decision of the State Superintendent that the mistake would not be repeated since the result might create an opportunity by hearing request for an additional education year for each handicapped student as required by continued eligibility during any status litigation.

the effect mootness has regarding the present rule in federal cases, that an actual controversy must survive at all stages of appellate review, not merely at the time the complaint is filed. The Chief Justice contends that actions begun when a case and controversy existed have a right to be heard and that the United States Supreme Court has an obligation to hear these cases, regardless of their current controversy status. Otherwise, an individual may lose some of the rights to which he is entitled. In support of this reasoning, he states that:

All agree that this case was "very much alive," * * * when the action was filed in the District Court, and very probably when the Court of Appeals decided the case. It is supervening events since the decision of the Court of Appeals which have caused the dispute between the majority and the dissent over whether this case is moot. Therefore, all that the court actually *holds* is that these supervening events do not deprive *this* Court of the authority to hear the case. I agree with that holding, and would go still further in the direction of relaxing the test of mootness where the events giving rise to the claim of mootness have occurred after our decision to grant certiorari or to note possible jurisdiction.

\* \* \* \* \* \*

I would leave the mootness doctrine as established by our cases in full force and effect when applied to the earlier stages of a lawsuit, but I believe that once this Court has undertaken a consideration of a case, an exception to that principle is just as much warranted as where a case is "capable of repetition, yet evading review." [Emphasis in original.]

*Honig,* 108 S.Ct. at 607–09.

■ The posture of this case in companion petitions by the School District and cross-petition by the State Board and State Superintendent is singularly broader than the one student and her separate education. The comprehensive decision required here will affect all Wyoming public education and, consequently, dismissal for mootness would be unjustified wherein the societal determinants require constitutional, statutory and administrative rule adjudication. The compelling public interest and the outstanding issues in conflict between the state agencies and the local school district require resolution of the basic question presented. Com., *Pennsylvania Liquor Control Bd. v. Dentici,* — Pa.Cmwlth. ——, 542 A.2d 229 (1988). Cf. *Ballard v. Wyoming Pari–Mutuel Com'n of State of Wyo.,* 750 P.2d 286 (Wyo.1988). See *Natrona County School District No. 1 v. McKnight,* 764 P.2d 1039 (Wyo.1988).

### 4. State Funding Pre–Age Twenty–One, Federal Funding Post Age Twenty–One

Within this separate appeal issue, the State Board supports its position of allowing school districts to spend federal funds for handicapped students post-twenty-first birthday on a per capita basis by use of language contained in the Title VI–B State Plan. The State Board, in responding to 20 U.S.C. §§ 1400, et seq. (1976 ed. & Supp. IV 1986), wrote a plan for obtaining federal funding for handicapped children by stating an intent to comply with the goals established in the EHA. These goals envision nationwide educational services for handicapped children from birth *to* age twenty-one. The regulations applying the language of 20 U.S.C. §§ 1400, et seq. (1976 ed. & Supp. IV 1986) also, however, encourage state and local educational agencies to go beyond the federal statutory minimums.

The Title VI–B State Plan subjects local school districts to the following requirement: the same expenditure out of state and local funds for the handicapped child as the per pupil expenditure in the district, less capital outlay, debt service and funds targeted for special students. This is the "excess costs" requirement that school districts are only to use federal dollars to pay for the greater expense of educating handicapped students. (34 C.F.R. §§ 300.182, 300.183, 300.229 (1987)). Comparable services with state and local funds are to be administered to all handicapped students. (34 C.F.R. § 300.231 (1987)). The school districts cannot supplant federal funds

money formerly spent from state and local resources on handicapped children. (34 C.F.R. § 300.230 (1987)).

The Wyoming Constitution creates direct funding criteria based on age ranges in Wyo. Const. art. 7, § 9 by providing that "[t]he legislature shall * * * create and maintain a thorough and efficient system of public schools, adequate to the proper instruction of all youth of the state, *between the ages of six and twenty-one*, free of charge * * *." (Emphasis added.)

Justification for this defined age limitation can be found in the minutes of the Wyoming State Constitutional Convention. Mr. Burritt of Johnson County was concerned that many of the school districts in the various counties were obtaining more funds for the education of children within their borders than they were entitled to receive. He wanted to amend the proposed language of Wyo. Const. art. 7, § 9, stating that the language "the legislature may require, by law, that every child of sufficient mental and physical ability shall attend public schools during the period *between the ages of six and eighteen years* * * *" should only apply as to funding to those "actually in attendance and enrolled." Journals and Debates of the Constitutional Convention at 186, 733 (1893) (emphasis added). In working as a county superintendent of education, he "found that they [the school districts] had made their report, sending in the names of every person *between the school ages*, in that district, whether they attended school or not." Mr. Brown of Albany County stated: "I think there is but one way to apportion this money among the schools, and that is the way provided by this section." Mr. Brown added: "What reason can there be against the theory of counting every person *of school age* in the county?" Mr. Brown concluded: "We have, by law, now a way ascertaining the age of every person in the county who is entitled to it; our assessors are required to incorporate this in his report." Mr. Jeffrey commented: "I have always been of the opinion that this matter of apportionment of school money properly belongs to the legislature, and the discussion here this morning tends further to prove it." There-

after, an attempt to strike language in this section as to apportionment of funds to counties "according to the number of children *of school age*," was defeated. Journals and Debates of the Constitutional Convention, supra at 733–36 (emphasis added).

■ Reading the minutes of the constitutional convention debates in conjunction with the Wyoming Constitution and W.S. 21–4–301, 21–4–302, and 21–2–501, establish the definition of "child of school age" to be five years of age to twenty-one years of age; thus, Wyoming is constitutionally obligated and statutorily directed to provide education to handicapped children only between five and twenty-one years of age. The dispository decision is not whether Tammy Ryan is eligible for federal aid as an adult twenty-one years old or older, but whether the Wyoming statutory scheme requires that the local school district provide extended educational services after the twenty-first birthday for the additional year *for any student*. Our responsibility under W.S. 21–4–301 is to determine if the hearing officer made an error of law in his decision. We conclude that the hearing officer improperly based his decision on the State Board's unauthorized expansion in the Title VI–B State Plan despite Wyoming Constitution and statute.

■ Additionally, the hearing officer's finding, based on an incompleted IEP, to secure education for another year past the twenty first birthday is also wrong. Tammy Ryan used her previously developed IEP to support her contention that the School District's original intent was to educate her through her twenty-first year, thus allowing her to graduate from the School District's special education program. She contends that the School District's policy, prior to receiving the State Department of Education advice memorandum, was to allow the student to complete the school year rather than terminate the student upon reaching his twenty-first birthday. We first fail to see how this change in procedure as to Tammy Ryan's continued eligibility for educational services would affect her since she reached her twenty-

first birthday prior to the beginning of the school year in question. Furthermore, the plan cannot be enforced if it lacks legislative justification as the School District's educational responsibility. It becomes illegal and unenforceable as legally unauthorized. *K N Energy, Inc. v. City of Casper*, 755 P.2d 207 (Wyo.1988); *Bright v. Los Angeles Unified School Dist.*, 18 Cal.3d 450, 134 Cal.Rptr. 639, 556 P.2d 1090 (1976).

The hearing officer based his incomplete IEP assessment on the graduation policy statement issued by the School District. He states:

The IEP goals for Tammy Ryan have not been met. She has not graduated under the graduation policy of the school district [just] because the Child Study Committee determined that Tammy has completed her individualized education program. Rather, she is considered to have "exited services" because she reached the twenty-one year old limit contained in the [new] policy.

The language in both the revised policy regarding the graduation of handicapped students by the School District and the old policy effective prior to the State Department of Education ruling on the use of state and federal funds for handicapped students, had the same results in its application to Tammy Ryan. Whichever policy is applied, the language of the old policy:

[A] handicapped student will be considered to graduate whenever the Child Study Committee determines that the student has completed his/her individualized education program *or* at the end of the school year *following* the student's 21st birthday. [Emphasis added.]

or under the language of the new policy:

In the case of extended educational services, a handicapped student will be considered to graduate whenever the Child Study Committee determines that the student has completed his/her individualized education program *or upon* reaching the age of 21. [Emphasis added.]

the effect was the same because of the date of her birth. If a school year can be considered as complete when applied to a handicapped student or whether the student is on a full year or nine month program the day before a new school year begins then, Tammy Ryan, having "exited services," satisfies the requirements of both policies.

 Based on the individual's 1987 continuing need for educational services and the hearing officer's interpretation of the School District's "Graduation of Handicapped Students" policy, the hearing officer's ruling went on further to imply that the School District had engaged in a contractual relationship with the Ryan family. He opines that:

Tammy Ryan has a continuing need for educational services which has been recognized by the school district through the approval by the Child Study Committee of the services requested on her behalf. The school district has committed to the Ryans to offer educational and related services for Tammy after age twenty-one and up to the day of her 22nd birthday.

Tammy Ryan asserts similar claims in her argument to this court. She notes that "legislation enacted pursuant to the spending power is much in the nature of a contract * * *." *Rowley*, 458 U.S. at 204 n. 26, 102 S.Ct. at 3048 n. 26 (citing *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981)). Thus, the family maintains that the Title VI–B State Plan, formulated to secure the necessary federal funding to supplement and enhance the state and local funds already in place for use by the handicapped student in Wyoming, became an obligation on the part of the State as to providing further educational services to those handicapped students twenty-one years old. Again, we do not agree as a matter of state statutory constitution without regard to SBE Rule, § 74. The cited federal cases can be distinguished.

Tammy Ryan quotes *Georgia Ass'n of Retarded Citizens v. McDaniel*, 716 F.2d 1565, 1578 (11th Cir.), reh'g denied 721 F.2d 822 (11th Cir.1983), cert. granted and judgment vacated 468 U.S. 1213, 104 S.Ct. 3581,

82 L.Ed.2d 880, remanded to and modified on other grounds 740 F.2d 902 (11th Cir. 1984), cert. denied 469 U.S. 1228, 105 S.Ct. 1228, 84 L.Ed.2d 365 (1985) as her authority to this contention. McDaniel can be distinguished as it stands for the right of severely handicapped children to receive, at public expense, educational services in excess of the 180 days constituting a school year in Georgia. In that action, Georgia and its individual school districts potentially were to lose their federal EHA funding. This effect was considered because the State of Georgia refused to grant additional educational services to all handicapped students beyond 180 days regardless of individual need and whether or not the student's IEP had been met for that school year.

We specifically reject the contention embodying a claim of ultra vires yet binding administrative agency contract. Regardless of what the State Superintendent or State Board indicated it would do concerning providing educational services to the age groups three to five and eighteen to twenty-one in the Title VI–B State Plan submitted, those agencies, as well as its citizens, are still subject to state law. We have said in *Tri–County Elec. Ass'n, Inc. v. City of Gillette*, 584 P.2d 995, 1006 (Wyo.1978) that

> [i]t is the duty of courts to sustain the legality of contracts when fairly entered into, *if reasonably possible to do so*, rather than to seek loopholes and technical legal grounds for defeating their intended purpose. [Emphasis added.]

This is an event, as described by the phrase "if reasonably possible to do so," where a contract, even if formed, is null and void, for as we also said in Tri–County Electric, "[i]t will not be supposed that the parties entered into a contract contemplating a contract amounting to a violation of the law * * *." Id. at 1006. It is a well-settled principle that "[c]ontracts cannot be used as a 'device to hoodwink the law.' Contractual provisions cannot rise above

constitutional and statutory law." Id. at 1004 (quoting from *Rural Electric Co. v. State Board of Equalization*, 57 Wyo. 451, 120 P.2d 741, reh'g denied 57 Wyo. 451, 122 P.2d 189 (1942)).

Tammy Ryan claims, as a jurisdiction factor, that an improper "change in educational placement" occurred, denying her access to further educational services from the School District. That is not this case.

We recognize the procedural responsibility government has in protecting the student's rights to a free appropriate public education, which requires guidelines for her to question the purpose for any change in educational placement. However, placement issues ended with the twenty-first birthday. School districts like municipalities are creatures of the state and can exercise only those powers and functions that are conferred by statutory definition. *K N Energy, Inc.*, 755 P.2d 207. So, even though Tammy Ryan had not then and may never complete the goals embodied in the School District's handicapped student graduation policy, the local education agency cannot be held responsible for non-achievement where state law provides the age limitation for school district continued education responsibility *for any child*.[17]

To summarize, the Wyoming Constitution and statutes limit agency authority to promulgate rules or execute contracts and, if not authorized, the provisions are void. The mandate of the Wyoming Constitution for education in the public schools ends at the twenty-first birthday and the constitutional terminal has also served as the legislative omega. Lacking more, the School District was neither authorized nor required to expend its funds for adult education not statutorily justified. See *Stewart By and Through Stewart v. Salem School Dist. 24J*, 65 Or.App. 188, 670 P.2d 1048 (1983) as differing only as involving an under-age child, not an over-age adult.

---

**17.** Actually, the record reflects that the student was held back from "graduation" by her parents in order to seek the additional year in school. It is fair to anticipate that in the additional year now passed, by June, 1988, graduation should have occurred and consequently, as to this student, the issue is now actually moot. She has received the additional year that she requested.

5. *Use of Additional Federal Funds*

The State Superintendent asserts that, in making assurances to the State Department of Education that educational services to twenty-one year olds would be provided, it relied upon language contained in both federal statutes and regulations. In developing a plan to gain funding for educational services to handicapped children, the State Board construes 34 C.F.R. § 300.186 (1987) as meaning that those funds ascribed to individuals counted as age twenty-one in the profile submitted to the federal government for entitlement purposes, are designated as per capita recipients of flow through funding. This is the "district can do what it can with $209 to $211" subject. This is also the "if you can, you must" federal funds procurement syndrome.

The School District challenges by appeal the decision of the State Superintendent that it can take or should use these funds for post-twenty-first education *when it cannot use state funding* for the same purpose, but also contests the argument of the student that the availability of the funds in some fashion creates an obligation distinct from statutory authentication. With detailed and comprehensive analysis of the complex federal regulations as attenuated by the State Board regulations, both the State and Tammy Ryan argue that acceptance and use of the available federal funds of about $209 or $211 per student is justified for education of the post-twenty-first birthday handicapped person. We do not agree.

██ In determining that the Wyoming statutes confine public school education to the twenty-first birthday, we also determine that the School District has no authority to use even non-state funds for unauthorized educational programs. The complex of legal problems in counter-arguments need not be pursued by us in effectuating the limitation designed by state statute.[18]

Our analysis that federal statutes and the regulations interpreting those statutes support our conclusions—*that local school districts and the State Department of Education, as collective receptacles for local and state tax dollars, cannot dispense educational services to any student under their respective dominion, that is beyond the definition of school age child as determined by state statutes.*

Dispositively stated, the Wyoming Constitution sets the *required* limit at the twenty-first birthday and any provisions beyond that age are the sole responsibility of the legislature in adoption of enabling legislation and provided funding. In construing statutes, the legislative intent is the primary consideration. *City of Evanston,* 715 P.2d 1381. The sole limitation other than availability of funding is the legislature's primary obligation for public education to age twenty-one. *Washakie County School Dist. No. One,* 606 P.2d 310. We not only determine that receipt by the School District of $209 to $211 cannot engender liability for total costs of $16,000 or more, but that under present legislation, neither the State nor the School District has legal authority to apply for and accept funds for post-twenty-first birthday adult education to be used by the public school district.

In regard to the reliance by Tammy Ryan on the administrative regulations of the State Department of Education in claiming the right to additional educational services, we hold that the administrative regulations, specifically SBE Rule, § 74(E), that infract upon acts of the legislature, are void and no remonstrations that they are merely an exercise of administrative discretion can save them. *Bright,* 556 P.2d 1090.

The conclusion by the State Department of Education that the federal regulations allow flow through financing of extended educational services to a handicapped twenty-one year old student from Title VI–B State Plan funds was contrary to law and

---

**18.** To hold otherwise, places the local school district in a proverbial bear trap of potential violation of federal law in use of the minimal funds and correlative violation of state authority to provide the required additional supporting funding from other resources.

an abuse of discretion by that agency. Although construction of statutes by agency officials charged with their execution, including the interpretation of authority vested in them to implement and carry out the statutory provisions, is entitled to weight; final responsibility for interpretation rests with the courts. *Simons,* 741 P.2d 1116; *Bright,* 556 P.2d 1090.

This court will, in exercise of its judicial responsibility, void and vacate administrative regulations that alter or amend statutes or enlarge or impair their scope.[19]

### 6. *Subpoena of Agency Personnel*

As an issue included in its petition for review to the district court, the State Board and State Superintendent included the denial by the hearing officer of a motion to quash subpoenas of personnel within the State Department of Education. A convoluted record status and briefing situation does not make resolution of the issue as presented in behalf of the State Superintendent any easier to provide. (No responsive briefing discussion was provided.) The School District, acting pursuant to authority of the Wyoming Administrative Procedure Act, requested issuance of subpoenas by the hearing officer to subpoena for testimony, State Department of Education personnel Audrey Cotherman, Dennis Donohue and Kenneth Blackburn. Although the subpoenas are included in the record, the motion of the State to quash is not. However, the three witnesses did testify, and the issue for this case is moot. Resolution of this issue would require us to render an advisory opinion for future cases, which invitation we decline. *Ballard,* 750 P.2d 286.

### VII. CONCLUSION

The decision of the hearing officer is reversed and the decision of the State Superintendent is also reversed since Natrona County School District No. 1, is neither entitled nor obligated to provide educational services for individuals within the district after the recipient becomes twenty-one by reaching his or her twenty-first birthday. The petitions for review are granted and the decisions from which appeal is taken are reversed.

BROWN, J., Retired, concurs in the result.

---

**19.** By virtue of SBE Rule, § 84, "Status of Child During Hearings," requiring continued education during the course of litigation as well as the "stay put" provision in the federal educational act, 20 U.S.C. § 1415(e)(3) (1982 ed. & Supp. IV 1986), we establish as a course of disposition of this case and the others similarly situate that until the mandate issues in this case, payments made and benefits conferred shall be financed as if the recipient had not achieved the twenty-first birthday. This accords with suggestion afforded by the State Superintendent in decision and litigant briefs.